UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

RACHEL II, INC.; MARIA SHUMAR;       :
RAYMOND P. BAURKOT, III;             :
                                     :
          Plaintiffs,                :
     v.                              :      No. 5:15-cv-01096
                                     :
STATE NATIONAL INSURANCE COMPANY,    :
                                     :
          Defendant.                 :
_____

### MEMORANDUM OPINION

**Plaintiffs' Motion for Remand (ECF No. 4):**              **Granted**
**Defendant's Motion for Judgment on the Pleadings (ECF No. 6):**   **Denied as moot**

**Joseph F. Leeson, Jr.**                                   **March 31, 2016**
**United States District Judge**

**I.      Introduction**

One night in February 2013, Damien Robinson, accompanied by his cousin, were in a bar called "Eddie G's" in Easton, Pennsylvania.[1] Also in the bar that night were members of a gang from Brooklyn, New York, known as the "Very Crispy Gangsters." Among them was a man named Miguel Angel Rodriguez, "a known criminal and drug dealer wanted for attempted homicide." A fight broke out between Mr. Robinson's cousin and one of the members of the gang, which left Mr. Robinson dead from a gunshot wound to his chest.

Mr. Robinson's estate filed suit in the Court of Common Pleas of Northampton County, Pennsylvania, against the Plaintiffs in this action: Rachel II, Inc., the owner of Eddie G's, Maria Shumar, the former president of the company, and Raymond Baurkot, III, the company's

---

[1] These facts are taken from the complaint in <u>Frazier v. Rachel II, Inc.</u>, No. C-48-CV-2013-11361 (Pa. Ct. C.P. Nov. 8, 2013), a wrongful death suit for which the Plaintiffs in this action are seeking insurance coverage from Defendant State National Insurance Company. <u>See</u> Resp. State National Insurance Company to Pl.'s Mot. Ex. A, ECF No. 5.

1

secretary.[2] Compl. ¶¶ 1-4, 7. According to the estate, Eddie G's had a long history of violent incidents, including a prior incident during which a gun was fired inside the bar's restroom, and "was a known gathering spot for criminals, gangsters, drug dealers, and individuals with violent propensities." The estate claims that Eddie G's did not take adequate security measures to protect its patrons from these dangerous individuals and charges Plaintiffs with liability for Mr. Robinson's death. That suit remains pending in the Court of Common Pleas.

Plaintiffs timely notified their insurer, Defendant State National Insurance Company, after they learned of the suit. State National responded by notifying them that their insurance policies did not cover the events giving rise to Mr. Robinson's death, because the policies contained an "assault and battery exclusion." Id. ¶¶ 11, 12-14. While Plaintiffs acknowledge the existence of the exclusion, they dispute its validity. They claim that an Eddie G's employee who worked as a bartender and a server signed the agreement that contained the exclusion, and that he lacked the authority to bind Rachel II to it. Id. ¶¶ 14-22.

To resolve the dispute, Plaintiffs filed this declaratory judgment action in the Court of Common Pleas seeking a declaration that State National is obligated to defend them in the underlying suit and indemnify them for any losses they sustain. Soon after, State National removed the action to this Court, invoking the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs now seek to have the action remanded to the Court of Common Pleas, arguing that the amount in controversy does not exceed the jurisdictional threshold, and, alternatively, that the Court should decline to exercise jurisdiction over the action as a matter of the discretion afforded to it by the Declaratory Judgment Act. Because the circumstances of this action counsel against this Court interfering with the orderly disposition of this dispute in state

---

[2]     The individuals are also each equity holders of Rachel II. Compl. ¶¶ 2-3.

court, the Court declines to exercise jurisdiction and this action shall be remanded to the Court of Common Pleas.

**II.     Analysis**

**A.     Background – The Declaratory Judgment Act and <u>Reifer v. Westport Ins. Corp.</u>**

The Declaratory Judgment Act ("DJA") provides that "in a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "May" implies discretion, and the Supreme Court has accordingly "long held that this [statute] confers discretionary, rather than compulsory, jurisdiction upon the federal courts."[3] <u>Reifer v. Westport Ins. Corp.</u>, 751 F.3d 129, 136 (3d Cir. 2014); <u>see</u> <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286-87 (1995) (describing the DJA as having a "textual commitment to discretion"). When the sole remedy sought in a case is a declaratory judgment,[4] the DJA has the effect of carving out "an exception to the general rule that 'federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.'" <u>Id.</u> (quoting <u>Quakenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 716 (1996)).

This discretion to decline jurisdiction must, however, be exercised in a principled manner. <u>Reifer</u> marks the latest effort in this circuit to guide the district courts through this

---

[3]     While the grant of authority under the statue is described as jurisdictional, "[i]t is an axiom that the Declaratory Judgment Act has not enlarged the jurisdiction of the courts over subject-matter and parties." <u>Aralac, Inc. v. Hat Corp. of Am.</u>, 166 F.2d 286, 291 (3d Cir. 1948) (quoting Edwin Borchard, <u>Declaratory Judgments</u> 233 (2d ed. 1941)). The effect of the Act was instead to "introduce[] an additional remedy of inestimable value for the determination of an already existing right.," and while "the right to such relief ha[d] been in some cases inherent the statute extended greatly the situations under which such relief may be claimed." <u>Id.</u>

[4]     Whether the DJA may be invoked to decline jurisdiction over a suit seeking both a declaratory judgment and some other kind of relief is an open question in the Third Circuit. <u>See</u> <u>Reifer</u>, 751 F.3d at 135 n.5 ("We have never ruled on the legal standard a district court must apply when addressing whether it may decline jurisdiction when both declaratory and legal relief are claimed."). The question has "sharply divided" the other circuits, with some holding that federal courts must exercise jurisdiction over cases that do not seek solely declaratory relief (at least if "the coercive claim is neither frivolous nor brought solely to secure federal jurisdiction"), while others leave some room for a court to decline to exercise jurisdiction over the entire case, or part of it, in certain limited circumstances. <u>See</u> <u>Perelman v. Perelman</u>, 688 F. Supp. 2d 367, 374-75 (E.D. Pa. 2010). In this case, both Plaintiffs and State National (via a counterclaim) seek only declaratory relief, so this question is not implicated.

process through its announcement of "a uniform approach" to the question. Id. at 145-46. While district courts in this and other circuits have long been instructed to consider a variety of factors to inform their discretion, Reifer's primary contribution is to elevate one particular factor above the rest: "the existence or non-existence of pending parallel state proceedings." See id. at 144. While "[t]he Supreme Court and [the Third] Circuit have long noted the importance of pending parallel state proceedings as a consideration in a district court's exercise of jurisdictional discretion," id. at 143, under Reifer's approach, the presence of parallel state proceedings should "militate[] significantly in favor of declining jurisdiction," while the absence of parallel state proceedings "militates significantly in favor of exercising jurisdiction," id. at 144-45. The presence or absence of parallel state proceedings does not end the matter, but if a district court intends to exercise jurisdiction when they exist, or decline jurisdiction when they do not, the court must ensure that other considerations are sufficient to overcome the outsized weight that Reifer places on the pendency of parallel state proceedings.[5]

While the presence or absence of parallel state proceedings thus supplies something of a presumptive answer to the question of whether to exercise jurisdiction, see State Nat'l Ins. Co. v. Landis, No. 14-607, 2015 WL 291722, at *5 (E.D. Pa. Jan. 15, 2015) (characterizing Reifer's framework as "a rebuttable presumption scheme, with the presence or absence of parallel state proceedings serving as the fulcrum"), district courts may not end the inquiry before giving "meaningful consideration" to a series of other factors, which may ultimately point in a different direction. See Reifer, 751 F.3d at 146 & n.22. The factors are modular, consisting of a core set of

---

[5] The weight Reifer places on this particular factor is attributable in part to the Supreme Court's implication that the "outer boundaries" of the discretion afforded by the DJA may be less expansive when no parallel state proceedings are pending, see Reifer, 751 F.3d at 143 n.18 (citing Wilton v. Seven Falls Co., 515 U.S. 277, 290 (1995)) (reading Wilton to "impl[y] that district courts' discretion may be more circumscribed where no parallel state proceedings exist"), and in part to the fact that a consensus has emerged among the Third Circuit's sister circuits that "increased emphasis" should be placed upon the pendency of parallel state proceedings, see id. at 144.

4

eight factors that must be considered in every case (to the extent each is relevant), which must be augmented by additional considerations in certain types of cases. The eight core factors are as follows:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;
>
> (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and
>
> (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id. at 146. Then, if the case fits a certain profile, certain other considerations must be appended to these core factors. For example, in all cases where a parallel state proceeding exists, the district court should also consider the standard articulated by the Supreme Court in Brillhart v. Excess Insurance Co. of America:[6] "whether the questions in controversy between the parties to the federal suit . . . can be better settled in the proceeding pending in the state court." Id. at 146 n.21 (quoting Brillhart, 316 U.S. at 495) (requiring district courts to consider this question "[i]n circumstances like Brillhart's). If the case arises in the insurance context, the district court should also consider the guidance of State Auto Insurance Cos. v. Summy;[7] namely, that (1) the district court should take into account a "party's 'vigorous objection' to the district court's assumption

---

[6] 316 U.S. 491 (1941).
[7] 234 F.3d 131 (3d Cir. 2000).

of jurisdiction," (2) "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise DJA jurisdiction," and (3) it should be a "rare" case, justified by "unusual circumstances," that a district court exercises jurisdiction when the case turns on settled state law.[8] See id. at 141, 146-47 (quoting Summy, 234 F.3d at 135-36). Or, if the case raises "issues of 'federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding," the district court should consider the guidance of United States v. Commonwealth of Pennsylvania, Department of Environmental Resources,[9] which recognized that the United States has a "compelling interest" in having a federal court, its forum of choice, determine questions of federal law, such as its own sovereign immunity, and that the presence of a parallel state proceeding may not militate in favor of declining jurisdiction if the state forum cannot timely or adequately resolve the issues at hand. See id. at 146 n.23 (quoting Summy, 234 F.3d at 134) (instructing district courts "facing the same or similar issues" that were present in that case to "continue to consult its guidance"); Pa., Dep't of Envtl. Res., 923 F.2d at 1076-79.

Both the eight core factors and these additional sets of context-specific considerations are non-exhaustive, "and there will be situations in which district courts must consult and address other relevant case law or considerations." See Reifer, 751 F.3d at 146. The finished product

---

[8] While a parallel state proceeding was present in Summy, Reifer suggests that Summy's factors should be counseled whenever a case arises in the insurance context, even if no parallel state proceeding is present. See Reifer, 751 F.3d at 146-47 (instructing district courts to consult Summy's guidance "in insurance cases," without limitation). Summy also prescribed three specific "relevant considerations" that courts should consider, but rather than reserve those for only insurance cases, Reifer incorporated them into the list of eight core factors that district courts must consider in all cases, with the exception of one factor that applies by its terms to only insurance cases. Compare Reifer, 751 F.3d at 140 (quoting Summy, 234 F.3d at 134) (setting forth these three additional factors from Summy), with id. at 146 (incorporating those three factors verbatim into the list of eight core factors that district courts must consider in all cases).

[9] 923 F.2d 1071 (3d Cir. 1991).

resembles a guided totality-of-the-circumstances balancing test,[10] but with a focus on the presence or absence of a parallel state proceeding.

**B.      There are parallel state proceedings pending in state court.**

Determining whether there are parallel state proceedings pending is therefore the starting point, and a question of substantial importance. What exactly constitutes parallel state proceedings, however, has not been defined precedentially at a particularly high level of detail. Brillhart compels the conclusion that the term embraces, at minimum, a proceeding "in which all the matters in controversy between the parties could be fully adjudicated." See Brillhart, 316 U.S. at 494-95; Reifer, 751 F.3d at 137 n.9. Wilton, which spoke interchangeably of "parallel state proceedings" and "parallel state litigation," viewed itself and Brillhart as dealing with "parallel proceedings, presenting opportunity for ventilation of the same state law issues, [that] were underway in state court." See Wilton, 515 U.S. at 290. The concept may be best understood by examining the concerns that motivated the Court to view the exercise of federal jurisdiction with disfavor in those cases.[11] Brillhart cautioned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided," see 316 U.S. at 495, while Wilton observed that federal jurisdiction should "yield[] to considerations of practicality and wise judicial administration," see 515 U.S. at 288.

Viewed through this lens, the underlying tort litigation pending in the Court of Common Pleas constitutes parallel state proceedings. This is so not because the tort action, standing alone, would afford the parties a full opportunity to obtain the declaratory relief they seek; it would not. Plaintiffs seek two separate declarations: a declaration that State National has a duty to defend

---

[10]      See Reifer, 751 F.3d at 147 ("As our non-exhaustive, multi-factor test makes clear, there are many potential considerations that properly inform a district court's sound and reasoned discretion.").

[11]      While there is a tendency to imbue the term "parallel state proceeding" with special qualities, the phrase was in fact not used at all by the Brillhart Court, and may best be viewed simply as shorthand for circumstances that counsel against the exercise of federal jurisdiction, rather than as possessing independent significance of its own.

them in the underlying tort action, and a declaration that their insurance policy with State National covers any losses they incur. State National, through its counterclaims, seeks the inverse. While the coverage dispute could be resolved within the confines of the underlying tort action through a post-judgment garnishment proceeding, see Atl. Mut. Ins. Co. v. Gula, 84 F. App'x 173, 175 (3d Cir. 2003); Landis, 2015 WL 291722, at *7 (reading Gula to stand for the proposition that "garnishment proceedings typically provide an adequate opportunity under Pennsylvania law to test coverage issues surrounding underlying tort actions"), the dispute over State National's duty to defend cannot wait until the end of the tort action for resolution. "An insurer seeks a declaration on whether it has a duty to defend to avoid uncertainty. . . . If, however, the ruling is delayed until the underlying action is concluded, the insurer must act while still in a quandary about its duty." Terra Nova Ins. Co. v. 900 Bar, Inc., 887 F.2d 1213, 1220 (3d Cir. 1989). When there is uncertainty over a duty to defend, the prudent insurer may elect to offer a defense "to avoid the risks that an inept or lackadaisical defense of the underlying action may expose it to if it turns out there is a duty to indemnify." See id. at 1219. But if it turns out that the insurer's duty to defend did not apply, the insurer may be unable to recover the costs of the defense from its insured because, under Pennsylvania law, "an insurer is not entitled to be reimbursed for defense costs absent an express provision in the written insurance contract." Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 589 (Pa. 2010). Therefore, the underlying tort action, standing alone, does not supply an adequate forum for resolution of the uncertainty over State National's duty to defend its insureds in that very action. See Terra Nova, 887 F.2d at 1219 (recognizing that an underlying tort suit is not a parallel action to a suit seeking a declaration on an insurer's duty to defend); Md. Cas. Co. v. Consumers Fin. Serv. of Pa., 101

F.2d 514, 516 (3d Cir. 1938) (observing that the scope of an insurer's duty to defend would "not be involved and [could not] be adjudicated" in an underlying tort action).

However, whether pending state litigation amounts to parallel state proceedings requires looking at more than just a snapshot of the state action at the time the district court is determining whether or not to exercise its jurisdiction. The Supreme Court has instructed that district courts should "inquir[e] into the scope of the pending state court proceeding" to assess whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding." See Brillhart, 515 U.S. at 495. While the underlying tort action, standing alone, would not supply that forum, Pennsylvania law affords trial judges the ability to coordinate multiple actions "to prevent duplication of efforts by the courts and inconsistent rulings." See Lincoln Gen. Ins. Co. v. Donahue, 616 A.2d 1076 (Pa. Commw. Ct. 1992) (discussing the coordination of tort actions with accompanying declaratory judgment actions between the tort defendants and their insurers). Had State National not removed this declaratory judgment action, it could have been coordinated with the underlying tort action and resolved as part of the same litigation. Calling upon a federal court to issue a declaration when the state court stood fully ready to do so as part of a coordinated set of proceedings is precisely the kind of "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation" that should be avoided. Brillhart and Wilton spoke not of interference with singular state court actions but of interference with "state proceedings" and "state litigation," and when the underlying tort action and this declaratory judgment action, which was originally filed in state court but removed to federal court, are viewed as a potential set of coordinated proceedings, it becomes clear that an attempt by a litigant to separate those proceedings into separate components, to be resolved piecemeal by the

9

state and federal courts, is the kind of "uneconomical" and "vexatious" interference with parallel state litigation that the Supreme Court has urged the district courts to avoid.

The Third Circuit expressed these same concerns in Summy. There, as here, a tort suit was pending in state court, and the defendant's insurer believed that it had no duty to defend against the claims. Summy, 234 F.3d at 131-32. To definitively resolve the issue, the insurer filed a declaratory judgment action against its insured in federal district court. Id. at 132. The insured responded first by asking the district court to refrain from exercising jurisdiction, and then, three days later, by filing its own declaratory judgment action in state court. Id. The district court agreed to exercise jurisdiction over the federal declaratory judgment action, which the Third Circuit concluded was in error. The court relied upon the concerns Brillhart and Wilton had expressed about district courts injecting themselves into disputes while parallel state litigation is already underway—avoiding "'vexatious' and 'gratuitous interference' with state court litigation," see id. at 136, exercising "restraint when the same issues are pending in a state court," id. at 134, and avoiding duplicative litigation, id. Importantly, it was not the district court's interference with the nascent state declaratory judgment action that the insured had filed that concerned the court. Rather, the court was troubled by the fact that the district court had destroyed the "prospects for coordinated management" of the underlying tort suit and the insurer's need for a declaratory judgment, preventing the state court from resolving the two disputes "under one jurisdictional roof." See id. at 135 (quoting Mitcheson v. Harris, 955 F.2d 235, 240 (4th Cir. 1992)).

> If the District Court had not interfered, the state court would have been able to develop a coordinated schedule of briefing and discovery that would have promoted the efficient resolution of both the declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties.

Id. at 135-36.

Here, unlike in Summy, there is not a duplicate state declaratory judgment action pending in state court. However, it is clear from Summy's reasoning that the state litigation the court was concerned about disrupting was not the duplicative state declaratory judgment action, of which Summy paid little attention (and which had not even come into existence until after the federal declaratory judgment action had been filed). Rather, it was the underlying tort litigation—and specifically its potential to supply a place to resolve the declaratory judgment action as well—that Summy did not want to disturb. Indeed, each of the reasons Summy articulated for declining jurisdiction would apply with equal force even if a duplicate state declaratory judgment action had not been pending at the time. If a declaratory judgment is not pending, one of the parties can file a declaratory judgment action in state court as soon as the federal court declines jurisdiction, and the state trial judge presiding over the underlying tort action can then create a "coordinated schedule of briefing and [fact] discovery" to bring the declaratory judgment action into the fold with the tort action. Seen this way, the litigation that is already underway in state court presents the "opportunity for ventilation of the same state law issues," which comports with the Supreme Court's instruction that district courts should "inquir[e] into the scope of the pending state court proceeding" to assess whether "the claims of all parties in interest can satisfactorily be adjudicated in that proceeding," rather than focusing only on the present status of the state court litigation. See Brillhart, 515 U.S. at 495; Landis, 2015 WL 291722, at *6 (recognizing that Brillhart and Wilton "focus[ed] on potentiality as opposed to present circumstance" in their conception of what amounts to parallel state proceedings).[12]

---

[12] Indeed, if the outcome of Summy depended upon the fact that a state declaratory judgment action happened to be pending at the time when the federal district court made its decision to exercise jurisdiction, that would mean that the case turned upon the fact that the insured was able to race to the state courthouse and initiate a declaratory judgment action before the district court was able to determine whether to exercise jurisdiction over its federal

11

Accordingly, the litigation underway in the Court of Common Pleas is a parallel state proceeding, which "militates significantly in favor of declining jurisdiction." See Reifer, 751 F.3d at 144-45. The remaining question is whether other pertinent factors point sufficiently in favor of exercising jurisdiction to outweigh this consideration.

**C.      The other pertinent factors do not counsel in favor of the exercise of jurisdiction.**

In its briefing, State National focused solely on the question of whether there is a sufficient amount in controversy to satisfy diversity jurisdiction, and did not acknowledge the fact that the Declaratory Judgment Act affords this Court the discretion to decide whether to exercise jurisdiction over this action. Plaintiffs did, and they argue that the more appropriate place for this action is state court alongside the pending tort litigation. They point to the fact that this action may involve some common questions of fact with the tort action, and that judicial economy is therefore served by having both claims resolved by the same judge. They also point out that the dispute between them and their insurer is purely a matter of state law that can be best resolved by the Pennsylvania courts.

Among the factors that must be considered are the convenience of the parties and the policy of avoiding duplicative litigation, and for the reasons already discussed, both weigh significantly in favor of allowing this dispute to be resolved in a coordinated fashion with the pending tort litigation. So too do the factors that apply specifically to insurance disputes. "[D]istrict courts should weigh a party's 'vigorous objection' to the district court's assumption of jurisdiction," Reifer, 751 F.3d at 141 (quoting Summy, 234 F.3d at 136), and there is no question that the Plaintiffs have vigorously objected to being deprived of the opportunity to resolve this dispute in the Court of Common Pleas. There is also no indication that this request for a

---

counterpart. The reasons Summy articulated for concluding that the exercise of federal jurisdiction in that case was in error belie any notion that the court's decision turned on that act of litigatory gamesmanship.

declaratory judgment, which centers on a dispute over an agent's authority to bind his principal, involves anything other than settled state law principles. See id. (quoting Summy, 234 F.3d at 136) ("[W]hen the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts. Unusual circumstances may occasionally justify such action, but declaratory judgments in such cases should be rare."). While the "general policy of restraint when the same issues are pending in a state court" is not implicated here, nor are there any concerns about preventing attempts at procedural fencing or races to res judicata, see id. at 146, the absence of those concerns is not sufficient to tip the scale in favor of exercising jurisdiction.[13] When the presence of pending parallel state proceedings is added to these factors, the result is in favor of this Court declining jurisdiction.

## III. Conclusion

When parallel litigation is pending in state court that is fully competent to resolve a dispute, a district court must ask whether that dispute "can better be settled in the proceeding pending in the state court." Reifer, 751 F.3d at 146 n.21 (quoting Brillhart, 316 U.S. at 495). That is the case here, and this action is therefore remanded to the Court of Common Pleas.

BY THE COURT

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[13] Certain of Reifer's factors, such as "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy," "the public interest in settlement of the uncertainty of the obligation," and "the availability and relative convenience of other remedies" appear to be more applicable when the question is whether a declaratory judgment is an appropriate remedy for the parties, rather than the question here, which is simply which court should be the one to render the judgment. See Note, Developments in the Law, 62 Harv. L. Rev. 787, 805-10 (1949), cited in Bituminous Coal Operators' Ass'n, Inc. v. Int'l Union, United Mine Workers of Am., 585 F.2d 586, 597 & n.20 (3d Cir. 1978) (discussing the pertinence of these factors to the question of whether a court may elect to "withhold declaratory relief" from the parties).